**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**Derrick O. Martin, Delenore Guyton, Curtis Thompson, and Michael Steadman, Intervening–Plaintiffs,**

v.

**DANA CORPORATION, Spicer Manufacturing, Inc., Defendants.**

**No. 3:01–CV–0372–AS.**

United States District Court, N.D. Indiana, South Bend Division.

May 20, 2002.

Kenneth Bird, Johanna Maple, Indianapolis, IN, for Petitioner.

Victoria Nilles, South Bend, IN, Kathleen M. Anderson, Shaun E. Graham, Fort Wayne, IN, John R. Maley, Indianapolis, IN, for Respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on the parties separate motions for leave to conduct an *ex parte* interview of one of the Defendant's, Dana Corporation, former employees. Additionally, Dana seeks to conduct certain *ex parte* interviews with certain other employees that have not established an attorney-client relationship with the EEOC but have been identified as potential class members. The matter is now fully briefed and the court now rules as follows.

### I. BACKGROUND

This suit was instituted by the Equal Employment Opportunity Commission on behalf of certain employees at Dana. The complaint alleges that various employees at Dana were subject to harassment based upon their race as provided under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The EEOC in investigating the alleged harassment at Dana is seeking to determine whether a former production supervisor, Willam Green, Jr.,: 1) has relevant information to acts of harassment at Dana; and 2) whether he might fall within the potential class of plaintiffs in this case. (Plaintiff's Motion at ¶¶ 4–6). Primarily, the EEOC seeks to interview Green for the second reason. (P's Brief in Support at p. 4). Dana objects to any *ex parte* communication between the EEOC and Green. It contends that Green is covered under Rule 4.2 and therefore no *ex parte* discussions can be had between Green and the EEOC. (Defendant's Brief in Response at p. 3).

Additionally, Dana has sought to communicate with certain potential class members, including Green, outside of the presence of the EEOC. (D's Motion for Leave to Conduct *Ex Parte* Interviews). Not surprisingly, the EEOC has objected to Dana conducting any such interviews.

## II. DISCUSSION

The issue of who may be contacted under Rule 4.2 of the Model Rule, generally, and more particularly in this case Rule 4.2 of the Indiana Rules of Professional Conduct [1] is an often litigated topic and one of serious debate dependent upon which party is seeking contact. Both parties here are seeking to interview a former employee of Dana Corporation. Both are seeking relevant information pertaining to the EEOC complaint against Dana Corporation, however, the EEOC contends that it also seeks to ascertain whether this particular former employee should also be included as a class member in its enforcement action.

Courts and commentators have reached conclusions spanning the entire ambit, with some prohibiting all communication with former employees, others allowing full access to former employees and still others searching for some middle ground as to what types of *ex parte* communication are permissible. At one end of the spectrum commentators have determined that former employees do not come under the ambit of protection provided by Rule 4.2. For example, in 1995 the American Bar Association interpreted Rule 4.2 to "not prohibit contacts with former officers and employees of a represented corporation, even if they were in one of the categories with which communication was prohibited while they were employed." ABA Committee on Ethics and Professional Responsibility, Formal Op. 95–396, at 7 n. 47 (1995).

More importantly, this court in *Brown v. St. Joseph County*, 148 F.R.D. 246 (N.D.Ind.1993)(Mag.J.Pierce) underwent a lengthy and thoughtful analysis of the applicability of Rule 4.2 to various employees. In *Brown*, the Defendant employers sought to prevent communication with the former employees arguing that those individuals acts or omissions could be imputed to the defendant for purposes of civil liability. *Id.* at 251. Unpersuaded by that argument, the late Magistrate Judge Pierce determined that 4.2 does not apply to former employees who no longer have any relationship with a corporation. *Brown*, 148 F.R.D. at 253.

In *Orlowski v. Dominick's Finer Foods, Inc.*, another court of this circuit determined that former managers are not encompassed under Rule 4.2. 937 F.Supp. 723, 728 (N.D.Ill.1996) (Mag.J.Keys). In construing Rule 4.2 of the Professional Rules of Conduct for the Northern District of Illinois [2], Magistrate Judge Keys found that communications between Plaintiffs' counsel and any former managers would not violate Rule 4.2.

Finally, the Indiana Court of Appeals underwent a lengthy analysis of this particular issue in *P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 732–37 (Ind. App.2002). The issue presented in that case was whether the plaintiff's counsel had violated Rule 4.2 by contacting the defendant corporation's former employee and general manager. *Id.* at 732. The Indiana court of appeals held "that Rule 4.2 contains no limitations on the contacts

---

**1.** Indiana Rule of Professional Conduct 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

**2.** Both parties have submitted both *Brown* and *Orlowski* in their briefs on this issue. Neither argues for any substantive or interpretive distinction in the rule. Although the court's own review of the different versions of Rule 4.2 between Indiana and Illinois reveals some different language used in the rule, the court sees no substantive difference that would alter the interpretation of Rule 4.2.

an attorney may make with the former employee of an adverse party." *Id.* at 737.

The court now will briefly discuss each sides contention that they should be allowed to engage in an *ex parte* communication with Green but that the other side should be prohibited from doing so, as well as other communication by Dana.

## A.   EEOC and DANA

■ As previously stated the EEOC seeks to communicate, *ex parte*, with Green for two reasons: 1) to ascertain relevant information; and 2) to discover whether he to should be a class member. Dana does not address the latter rationale, but focuses solely on the former reason in arguing to this court that such a communication should not be granted. Dana concludes that because Green held some managerial responsibilities such contact should bar any communication. However, Dana does not contend that any information that would be provided by Green would be imputed to Dana or bind Dana in any way and nor could it. Both, *Brown* and *Orlowski* found as much. *Orlowski*, 937 F.Supp. at 728 citing *Brown*, 148 F.R.D. at 252 (citations omitted)(former employees cannot bind the corporation).

Furthermore, Dana has not raised any argument as to any potential confidential, classified or privileged information that could possibly be disclosed as a result of the EEOC's contact with Green. See *Orlowski* at 728. Dana has failed to supply any underlying basis for its conclusion that such *ex parte* contact by the EEOC should be prohibited other than the fact that Green held managerial responsibilities at Dana. Therefore, in light of the caselaw in this state, district and circuit and without offering any specific reason (i.e. privileged communication) as to why this particular former employee should not be communicated with *ex parte*, the court finds that such contact is not in violation of the letter and spirit of Rule 4.2.

■ Dana's counsel has also moved the court to conduct an *ex parte* interview of individuals identified by the EEOC as "potential class members" and "class members." See Dana's Motion for Leave to Conduct *Ex Parte* Interviews. The court finds that until certain individuals characterized as "potential class members" establish an attorney-client relationship Dana is permitted to engage in such *ex parte* communication. However, counsel for Dana runs the risk of running afoul of Rule 4.2 should it conduct any *ex parte* communication with a represented party and should be extremely careful before proceeding along this path in conducting such interviews. Therefore, the reasoning supplied in Dana's Motion along with its accompanying briefs, persuade this court to find that such *ex parte* interviews may be allowed to the extent that the EEOC cannot demonstrate the establishment of an attorney-client relationship. The court strongly urges both parties to communicate with one another on the issue of which individuals have established an attorney client relationship before any such communication with these individuals takes place.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Interview Dana's former supervisor [Docket Entry No. 32] is now **GRANTED** and the Defendants Motion for Leave to Conduct *Ex Parte* Interviews [Docket Entry No. 37] is now **GRANTED.   IT IS SO ORDERED.**